## CIRCUIT COURT OF FAIRFAX COUNTY

Jeffrey Eisenach

v.

Vicki Eisenach

October 10, 1996

Case No. (Chancery) 144355

BY JUDGE GERALD BRUCE LEE

This matter is before the Court on the wife's motion for *pendente lite* relief including child support, spousal support, and an award of attorney's fees. Additionally, this matter is before the Court on the husband's cross-motion for pendente lite support, for contribution toward the fees of a custody evaluation performed by Dr. Bruce Copeland, for credit for funds advanced voluntarily toward payment of a mortgage, and for credit for child support retroactive to June, 1996.

This matter was heard *ore tenus* by the Court on September 19, 1996. After considering the evidence, the testimony of the witnesses, and the statutory factors set forth in § 20-103 of the Code of Virginia, the Court makes the following findings of fact and conclusions of law with respect to the questions presented.

Several issues were presented by the wife's motion for *pendente lite* support.

### Voluntary Under-Employment Pendente Lite

The first issue is whether the Court may consider whether a spouse is voluntarily under-employed in a *pendente lite* proceeding. The wife contends that the issue of voluntary under-employment and imputation of income are not

appropriate in a *pendente lite* proceeding because the statutory factors for permanent spousal support do not apply. *Weizenbaum v. Weizenbaum*, 12 Va. App. 899 (1991). The wife contends that § 20-103 of the Code of Virginia only requires consideration of sums "necessary for the maintenance and support of the petitioning spouse" or "to enable such spouse to carry on the suit." *Id.* at 903-904. The wife contends that the issue of voluntary under-employment is only relevant in a proceeding to fix permanent support at a final equitable distribution proceeding. Va. Code § 20-107.2 (1995). The Court holds that § 20-103 of the Code of Virginia must be read with § 20-108.1 of the Code of Virginia. Section 20-108.1(A) of the Code of Virginia provides in pertinent part:

> In *any* proceeding on the issue of determining spousal support, the court shall consider all evidence presented relevant to any issues joined in that proceeding.

Va. Code § 20-108.1(A) (1995).

Subsection (B) regarding child support mandates that the court consider eighteen factors, including factor three, "imputed income to a party who is voluntarily unemployed or voluntarily under-employed." The court holds that in a *pendente lite* proceeding, the Court must inquire into the earnings, earning capacity, and needs of the parties in making a judgment regarding spousal support. The court may also consider the issue of voluntary under-employment if it is presented by the evidence. The wife's motion to exclude evidence of voluntary under-employment is overruled.

These parties were married on August 31, 1985, and separated on January 10, 1995. They have two children, Sarah Jean, age 11, and Andrew Robert, age 9. The children attend Flint Hill School full time.

*The Income of the Parties*

*Husband's Income*

Mr. Jeffrey Eisenach is employed by the Progress and Freedom Foundation as the President and Chief Executive Officer. The Progress and Freedom Foundation is a "conservative think tank" non-profit corporation. Mr. Eisenach testified that his current income from the Foundation is $160,000.00, that is $13,333.00 per month. Additionally, Mr. Eisenach testified that he earns approximately $21,000.00 in additional income. Mr. Eisenach testified that he earns additional income from fees for public speaking engagements which is

includable in his gross income at $1,814.00 per month. The Wife's counsel contends that the Court should base the award upon Mr. Eisenach's 1995 income of $203,000.00 on the grounds that his earning capacity remains at that level. The parties stipulated that in 1995, Mr. Eisenach received a $25,000.00 one-time bonus for extraordinary performance in his job from the Foundation. Mr. Eisenach further testified that the Foundation experienced a 50% drop in revenue raised for 1996. He testified that the Board of Directors decided to reduce the size of staff and reduce senior staff salaries by 20% which reflects his reduction in salary from $200,000.00 to $160,000.00 effective July 1, 1996. The historical evidence is that Mr. Eisenach was initially employed at $135,000.00 per year and that in May of 1995, he received a raise to $200,000.00 per year and a $25,000.00 bonus. Mr. Eisenach testified that the recent change in the financial circumstances of the corporation resulted in the reduction in his salary, the down-sizing of the organization and a nearly fifty percent staff cut. The Court was not presented with any evidence that Mr. Eisenach has the power to artificially decrease his income or that the Board of Directors was manipulated to reduce his income. The Court holds that Mr. Eisenach's monthly gross income is $15,147.00. The Court rejects the wife's attempt to include in gross income fees and expenses advanced by the corporation for Mr. Eisenach's business expenses, such as lunches, cellular phone, and other associated expenses. These expenses are not includable in the husband's gross income for the purposes of taxes. The Court will not impute income to Mr. Eisenach from business expenses.

*Wife's Income*

Ms. Vicki Eisenach is self-employed as a massage therapist. Ms. Eisenach completed a course of training and became a certified massage therapist in May, 1995. Ms. Eisenach had a business arrangement with the Conference Center at the Westfields and the Club at the Westfields, two separate entities. Her relationship with the two Westfields entities involves her being available as a massage therapist on call at a set fee, with a commission to the entity. She earns approximately $45.00 per massage at the Conference Center and $46.75 per massage at the Club. Ms. Eisenach also maintains a business entitled Body Kneads. Ms. Eisenach has a business arrangement with Mr. Gary Wells where the two of them market their services and share some clients. Ms. Eisenach filed a business license application projecting her income at $5,000.00 for 1996.

Prior to being self-employed as a massage therapist, Ms. Eisenach was a stay-at-home mother from 1985 to 1995. Her last outside employment was in

1985 as an associate TV producer. Ms. Eisenach is a college graduate and a former teacher. However, Ms. Eisenach does not currently have school teacher certification.

Ms. Eisenach is attempting to establish a new business. Ms. Eisenach contends that her current earnings are $473.00 per month. The husband maintains that Ms. Eisenach is voluntarily under-employed. He contends that on average this year of 1996, Ms. Eisenach has performed seven massages per month (seven massages per month for one and one-half hours each), resulting in an average gross income of $473.00 per month. Based upon the evidence, the Court holds that Ms. Eisenach's current gross income is $473.00 per month.

### Husband's Motion to Impute Income to Wife

The husband contends that Ms. Eisenach is voluntarily under-employed and that income ought to be imputed to her. He contends that the wife is available for employment during the children's school hours and is not actively pursuing her business. Mr. Eisenach contends that the Court should impute income to Ms. Eisenach.

The parties financial statements reflect a considerable amount of debt exceeding income. Both parties contend that they have been forced to borrow funds from relatives and to use credit cards to pay current expenses.

### Imputation of Income

The Court in considering whether or not to impute income to a party and whether or not the parties are voluntarily under-employed must take in consideration several factors: (1) the income of the spouse; (2) the potential earning capacity of a party based upon average earnings of other similarly situated individuals; (3) availability of work; (4) earning potential; (5) education and training of the spouse; (6) the efforts, if any, of the spouse to obtain employment consistent with their training and education; and (7) such other factors as the Court deems appropriate for the best interest of the children and preservation of the marital estate.

The wife offered the testimony of Ms. Sherry Fretl, a massage therapist. Ms. Fretl was qualified as an expert in the field of massage therapy. Ms. Fretl testified that she has been self-employed in northern Virginia as a massage therapist since 1992. Ms. Fretl started her own massage therapy business in 1995. She testified that the massage business fluctuates. Ms. Fretl anticipates earning $20,000.00 this year. She has earned $13,000.00 thus far. Ms. Fretl

has considerable training and experience in a variety of massage techniques. She opined that she would expect that an experienced massage therapist could earn at least $20,000.00 per year. She acknowledges that earlier in her career and in 1995, she was employed at Petra's Salon in Fairfax. She testified that during that year 1995, she earned approximately $23,000.00 in her employment with Petra's and other employment. Ms. Fretl testified that she works at Ashburn Physical Therapy Center, in addition to her own business. She uses her work at Ashburn to obtain clients. Additionally, she puts on seminars at open houses at a health club across the street from the physical therapy center. She also solicits work at the Olympic Gym. She stated that along with word of mouth and her work, she is generating new clients. Ms. Fretl worked at Petra's for three or four years on a fifty-fifty split of fees and developed experience and clientele. She opined that a beginning massage therapist ought to earn approximately $13,000.00 per year gross.

Ms. Eisenach stated she was offered employment with Petra's Salon in Fairfax at a rate of $35.00 per massage. She admits that she has not engaged in any significant marketing efforts to develop her clientele or business. She does not advertise, solicit health clubs or hotels or chiropractors, and relies principally on word of mouth and the Westfields Conference Center for clients. Ms. Eisenach states that as a new massage therapist, it will take time to build her clientele and to establish relationships with other entities. Ms. Eisenach has not sought out any salaried or other steady employment. Ms. Eisenach testified that she thought it was her husband's responsibility to be responsible for the family income as she was establishing a new business.

In reviewing the factors for voluntary under-employment in this case, the Court holds that Ms. Eisenach is voluntarily under-employed. Ms. Eisenach has not demonstrated that she is using her best efforts to increase her income consistent with her training. The Court finds that according to the evidence, Ms. Eisenach is only employed seven to ten hours per month. Under the circumstances of this case, where the parties financial statements reflect a monthly deficit in excess of $5,000.00 per month, the Court holds that for a certified massage therapist to only be employed seven hours per month is voluntary under-employment. The Court holds that, in this case, Ms. Eisenach's mere seven hours per month work to establish a new business when the family is running in excess of $5,000 a month deficit is voluntary under-employment. The parties are going through a contested divorce. There is not enough to go around. Each side anticipates spending in excess of $20,000.00 in attorney's fees in order to pursue their objectives in this case. For the reasons stated above, the Court will deviate from the guidelines. The testimony of the wife's own expert demonstrates that Ms. Eisenach is capable of earning

at least $13,000.00 per year or $1,083.33 per month. The contrast between the diligent effort of the wife's expert in pursuing her business interests, marketing, acquiring experience and exposure to potential clients and that of Ms. Eisenach is remarkable. Ms. Eisenach seems to be waiting for the clients to come to her, as opposed to earnestly soliciting new clients daily and acquiring more professional skills.

The Court holds that under these circumstances where the debts are extreme and the Court has found that one of the parties is voluntarily under-employed, income will be imputed to that party. The Court holds that it will impute income to Ms. Eisenach in the amount of $1,083.33 per month.

Accordingly, the Court will order that the Husband pay $3,151.81 in spousal support and $1,847.33 in child support per month.

### Husband's Motion for Contribution for Cost of Custody Evaluation

The Court has considered the husband's motion for contribution from the wife for the cost of a custody evaluation. The evidence is that, on the husband's motion, the Court directed Dr. Copeland to perform a custody evaluation of the parties and the children. The cost of the custody evaluation was nearly $13,000.00. Mr. Eisenach has paid $11,000.00 of the custody evaluation costs. In reviewing the financial statements of both parties, the Court holds that Ms. Eisenach does not have the current ability from income or assets to contribute to the amount of the custody evaluation. The custody evaluation was apparently necessary. For those reasons, the motion will be denied.

### Husband's Motion for Retroactive Application of Support

The evidence is that the parties by agreement selected the date of September 19, 1996, for hearing with the understanding that the Court would consider making the support award retroactive. Based upon the evidence presented, the Court directs that Mr. Eisenach be given credit for support paid retroactively to June, 1996. The parties are to make the appropriate mathematical adjustments based upon the award retroactive to June 30, 1996.

*Wife's Request for Funds to Carry
on Cost of Litigation*

The parties stipulate that the cost of this divorce for each side is anticipated to be $20,000.00 each. The Court holds that in this case where child custody and factors in determining equitable distribution are contested, that $20,000.00 in attorney's fees is not unreasonable. The Court further finds that Ms. Eisenach needs assistance in paying the cost of this suit. The Court will direct Mr. Eisenach to pay $20,000.00 in attorney's fees on behalf of Ms. Eisenach. This is to be paid with a $5,000.00 lump sum payment initially and thereafter at intervals of $2,500.00 every quarter. With respect to payment of the mortgage, the Court will direct Mr. Eisenach to pay the second trust mortgage. Ms. Eisenach will pay the first trust mortgage payments out of the support. Both parties are ordered to keep their respective mortgages current.

*Referral to Alternative Dispute Resolution*

The Court upon its own motion is referring this matter to alternative dispute resolution with the Northern Virginia Mediation Service. Both parties are directed to participate in at least one session of mediation with Northern Virginia Mediation Service to see if they may be able to resolve some of the issues respecting child custody and equitable distribution.